UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PAUL A. MITCHELL,**

      **Plaintiff,**

v.                                                         **Case No: 6:16-cv-1648-Orl-37DCI**

**NORTH CAROLINA MEDICAL
BOARD, PATRICK BAESTRIERI,
SARAH EARLY, KAREN MCGOVERN,
CHERYL HARA, ASHLEY M. KLEIN,
SADZI OLIVA and DANIEL A.
KELBER,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on the undersigned's review of *pro se* Plaintiff's Complaint (the Complaint; Doc. 1) in connection with Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (the IFP Motion; Doc. 15). As part of reviewing the IFP Motion, the Court is obligated to review Plaintiff's Complaint and dismiss the case if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Because Plaintiff's Complaint fails to allege sufficient facts to establish personal jurisdiction, the undersigned recommends that this case be dismissed as frivolous. *See Michaels v. Micamp Merch. Servs.*, No 6:13–cv–1920–Orl–37DAB, 2014 WL 235474, at *2 (M.D. Fla. Jan. 22, 2014) (dismissing complaint as frivolous for improper venue and lack of personal jurisdiction).

**I.      BACKGROUND**

On September 20, 2016, Plaintiff simultaneously filed the Complaint and the IFP Motion. In his Complaint, Plaintiff alleged various causes of action against eight nonresident Defendants under Title VII of the Civil Rights Act of 1964, the Fourteenth Amendment, and 28 U.S.C. §§ 1981 and 1983.[1]  Doc. 1.  Plaintiff's causes of action appear to be based upon alleged racial discrimination and retaliation that occurred in Colorado, Illinois, and North Carolina between 2002 and 2015.

In August 2002, Plaintiff began working for Rocky Mountain Cancer Centers (RMCC) as a radiation oncologist in Colorado Springs, Colorado.  Doc. 1 at ¶ 16.  Beginning in his second year with RMCC, Plaintiff objected to what he perceived as discriminatory and hostile employment practices by RMCC's management.  In August 2005, Defendant Sarah Early (Defendant Early), the Executive Director of the Colorado Physician Health Program (the CPHP), allegedly asked a CPHP evaluating physician, at the behest of RMCC's management, to diagnose Plaintiff as impaired.  Doc. 1 at ¶ 17.  The CPHP physician allegedly refused.  *Id.*  RMCC fired Plaintiff in February 2006.  *Id.*

After RMCC fired him, Plaintiff filed an EEOC charge for discriminatory discharge, hostile working environment, and retaliation.  Doc. 1 at ¶ 18.  Plaintiff alleged that beginning in

---

[1] Courts have dismissed at least six of Plaintiff's federal actions as frivolous: five in the District of Colorado and one in this District; all involving claims related factually in some way to this case and three involving some of the same claims against some of the same defendants in this case. *See Mitchell v. Rocky Mountain Cancer Ctr.*, 6:16-cv-1359-PGB-KRS (M.D. Fla.); *Mitchell v. Boland et al.*, 1:15-cv-559-CMA-CBS (D. Col.); *Mitchell v. McGovern et al.*, 1:15-cv-374-LTB (D. Col); *Mitchell v. Hara et al.*, 1:08-cv-1388-ZLW (D. Col.); *Mitchell v. Hara*, 1:07-cv-2637-ZLW (D. Col.); *Mitchell v. Rocky Mountain Cancer Ctrs. et al.*, 1:07-cv-1479-BNB-MJW (D. Col). The last of Plaintiff's Colorado cases alleged frivolous claims against two of the United States Magistrate Judges involved in his prior Colorado cases. *See Mitchell v. Boland et al.*, 1:15-cv-559-CMA-CBS (D. Col.).

fall 2006, Defendant Early and RMCC agreed on a plan to create a pretext for Plaintiff's firing. *Id.* Specifically, Defendant Early and RMCC allegedly conspired to induce Mitchell to self-report sexual misconduct. *Id.* In May 2007, Defendant Early sent a letter to Plaintiff stating that she would report him to the Colorado Medical Board (the CMB) if he did not submit to a boundary course for violation of patient sexual boundaries. Doc. 1 at ¶ 19. In June 2007, Defendant Early allegedly colluded with a CMB employee to issue a board order directing Plaintiff to submit to an exam to determine whether Plaintiff suffered from an impairment. *Id.*

On June 5, 2007, Defendant Cheryl Hara (Defendant Hara), a CMB employee, issued an order to Plaintiff stating that Plaintiff must immediately contact the CPHP to arrange any and all examinations necessary to determine whether Plaintiff was still able to practice medicine with reasonable skills and safety. Doc. 1 at ¶ 20. Plaintiff did not contact the CPHP. Doc. 1 at ¶ 21. Thereafter, Defendant Hara suspended Plaintiff's Colorado medical license and reported the suspension to the National Practitioner Data Bank (the NPDB). *Id.*

After suspending Plaintiff's medical license and reporting the suspension to the NPDB, Defendant Hara communicated with Defendant Sadzi Oliva (Defendant Oliva), who worked for the Illinois Department of Financial and Professional Regulation (the IDFPR). Doc. 1 at ¶ 22. On October 4, 2007, Defendant Oliva purportedly refused to renew Plaintiff's Illinois medical license and reported the action to the NPDB. *Id.* Afterwards, Plaintiff filed two complaints in federal court in the District of Colorado alleging causes of action under 42 U.S.C. § 1983. Doc. 1 at ¶ 23. The federal court in Colorado dismissed both complaints pursuant to 28 U.S.C. § 1915. *Id.*

Plaintiff moved from Colorado to Florida in late 2007. Doc. 1 at ¶¶ 6, 25. While in Florida, Plaintiff brought an action against Defendants Early and Hara in state court (Plaintiff's Complaint is not clear regarding whether this action was brought in Colorado state court or Florida state

court). Doc. 1 at ¶ 25. The state court dismissed the action for failure to post bond costs. *Id.* Plaintiff moved out of Florida in 2010. Doc. 1 at ¶ 6.

On August 14, 2014, Plaintiff (living outside of Florida)[2] emailed Defendant Karen McGovern (Defendant McGovern), the current Program Director for the CMB, to determine what he must do to have his suspension removed. Doc. 1 at ¶ 26. Shortly thereafter, Plaintiff emailed a Petition for Reconsideration of Summary Suspension (the Petition) to the CMB board staff. Doc. 1 at ¶ 27. Defendant McGovern responded to Plaintiff's email and advised him that all documents related to the Petition should be directed to her. Doc. 1 at ¶ 28. Plaintiff then contacted the chair of the medical board to express his concerns that Defendant McGovern intended to conceal the Petition from the board. Doc. 1 at ¶ 29. After due consideration, the CMB denied the Petition and advised Plaintiff that the suspension of his Colorado medical license would remain in effect until Plaintiff provided documents establishing compliance with the CMB's December 14, 2007 order.[3] Doc. 1 at ¶ 32.

Also in August 2014, Plaintiff (while still living outside of Florida) began pursuing a North Carolina medical license. Doc. 1 at ¶ 33. He spoke to the director of the North Carolina Physician Health Program (the NCPHP) and signed a release permitting the NCPHP to receive his CPHP

---

[2] According to Plaintiff: "The area in or around Orlando, Florida was Plaintiff's domicile from 2007 to 2010. In December 2015, Plaintiff returned to live and seek employment in Orlando, Florida." Doc. 1 at ¶ 6. Plaintiff later alleges that, "In late 2007, Mitchell moved to Florida." Doc. 1 at ¶ 25.

[3] In March 2015, Plaintiff filed a complaint against Defendants Hara and McGovern in federal court in the District of Colorado. *See Mitchell v. McGovern et al.*, 1:15-cv-559-CMA-CBS, at Doc. 5 (D. Col. Mar. 30, 2015). In that action, Plaintiff paid the filing fee and did not attempt to proceed *in forma pauperis*. *Id.* at Doc. 1. Weeks after the Magistrate Judge made a recommendation to dismiss the case, Plaintiff, this time attempting to proceed *in forma pauperis*, filed his frivolous action against two Magistrate Judges in the District of Colorado and the defendants' attorneys, alleging civil rights violations and a criminal conspiracy. *See Mitchell v. Boland et al.*, 1:15-cv-01544-LTB, at Doc. 1 (D. Col. July 21, 2015).

records. *Id*. Plaintiff submitted a re-entry application for a medical license to the North Carolina Medical Board (Defendant NCMB) on March 3, 2015. Doc. 1 at ¶ 38.

On August 5, 2015, concerned that his medical license would be useless with the NPDB report regarding the Colorado suspension, Plaintiff emailed to Defendant NCMB's medical director a copy of the Petition he previously provided to the CMB. Doc. 1 at ¶ 42. The medical director then purportedly forwarded the Petition to Defendant NCMB's attorney, Defendant Patrick Baestrieri (Defendant Baestrieri). *Id*. Defendant Baestrieri advised Plaintiff that the appropriate way for Plaintiff to handle the situation was for Plaintiff to petition the NPDB and request that the Colorado action be voided or altered. Doc. 1 at ¶ 43.

On September 18, 2015, Defendant NCMB denied Plaintiff's application for a North Carolina medical license. Doc. 1 at ¶ 44. Plaintiff believes that Defendant Balestrieri read the Petition and sought to retaliate against Plaintiff by withholding Plaintiff's license and reporting adverse action to the NPDB. Doc. 1 at ¶¶ 44–45. Specifically, Plaintiff makes accusations that, on November 5, 2015, Defendant Balestrieri reported to the NPDB that Plaintiff was denied a medical license because of the facts, circumstances, and actions relating to his interactions with other state medical boards. Doc. 1 at ¶ 44.

Plaintiff subsequently filed an injunction to restrain Defendant Balestrieri from withholding his North Carolina medical license. Doc. 1 at ¶ 46. On December 1, 2015, Defendant Balestrieri filed a second adverse report to the NPDB stating that Plaintiff had filed a state court lawsuit against several NCMB and CMB staff members. *Id*.

Sometime in December 2015, Plaintiff returned to Florida to seek employment. Doc. 1 at ¶ 6. Plaintiff alleged that he entered into a contractual relationship to obtain a Florida medical

license and that Defendant NCMB is aware of this relationship. Doc. 1 at ¶ 53. Plaintiff was denied a Florida medical license in March 2016. Doc. 1 at ¶ 83.

Plaintiff appears to believe that he was unsuccessful in obtaining a Florida medical license because Defendant NCMB purportedly made false and unlawful reports to the NPDB. Doc. 1 at ¶ 53–55. Further, Plaintiff appears to believe that he was unsuccessful in obtaining a Florida medical license because Defendants Hara and McGovern purportedly disseminated false information. Doc. 1 at ¶ 83. It is not clear from Plaintiff's allegations whether Plaintiff believes that any of the other Defendants prevented Plaintiff from obtaining a Florida medical license.

On December 8, 2016, the Court entered an Order to Show Cause why this case should not be dismissed as frivolous for lack of personal jurisdiction. Doc. 26. Plaintiff filed his response on December 29, 2016 (the Response). Doc. 27. Plaintiff's Response did not include any additional facts or argument to establish that the Court has personal jurisdiction over Defendants. *Id*. Instead, Plaintiff's Response set forth various wild accusations regarding the propriety of the Court's Order to Show Cause. *Id*. The undersigned declines to address Plaintiff's wild accusations.

## II.   ANALYSIS

As part of reviewing a plaintiff's application to proceed *in forma pauperis*, a court is obligated to review the complaint and dismiss the case if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).[4] In evaluating a complaint under § 1915, the Court must liberally construe the complaint, *see Tannenbaum v. United States*, 148

---

[4] The statute governing proceedings i*n forma pauperis* references actions instituted by prisoners, *see* 28 U.S.C. § 1915, but has been interpreted to apply to all litigants requesting leave to proceed *in forma pauperis*. *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004) (per curiam).

F.3d 1262, 1263 (11th Cir. 1998) (per curiam), but the Court is under no duty to "rewrite" the complaint to avoid frivolousness. *See Campbell v. Air Jamaica, Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

"A claim is frivolous if it is without arguable merit either in law or fact" or "if the plaintiff's realistic chances of ultimate success are slight." *Fortson v. Georgia*, 601 F. App'x 772, 774 (11th Cir. 2015) (per curiam) (citations omitted). A claim is also frivolous if a defense is obvious from the face of the complaint and the defense would defeat the plaintiff's basis for imposing liability as a matter of law. *See Clark v. Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 & n.2 (11th Cir. 1990). In this case, Plaintiff's Complaint is frivolous on its face for lack of personal jurisdiction. *See Michaels v. Micamp Merch. Servs.*, No 6:13–cv–1920–Orl–37DAB, 2014 WL 235474, at *2 (M.D. Fla. Jan. 22, 2014) (dismissing complaint as frivolous for improper venue and lack of personal jurisdiction).

In evaluating whether the Court has personal jurisdiction over Defendants, the Court uses a two-step analysis. "First, we determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute."[5] *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (citation omitted). "Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not

---

[5] Based upon the allegations in the Complaint, Plaintiff has failed to establish general jurisdiction under Florida's long-arm statute. § 48.193, Fla. Stat. (2016). Similarly, it appears from the face of the Complaint that Plaintiff has failed to establish specific jurisdiction under Florida's long-arm statute, although it may be possible that Plaintiff could allege other facts that would establish specific jurisdiction under that statute. But the Court finds it unnecessary at this time to analyze specific jurisdiction under Florida's long-arm statute because the allegations in the Complaint fail to establish that the exercise of personal jurisdiction is appropriate under the Constitution.

offend 'traditional notions of fair play and substantial justice.'" *Id*. (citation omitted).  In other words, "[t]he Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has 'fair warning' that he may be subject to suit [in the forum state]." *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (citation omitted).

"This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*. (citations omitted).  With regard to the fair play and substantial justice requirement, the Court must consider "the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Id*. (citation omitted).

In this case, Plaintiff has not pled facts that are sufficient to establish that the exercise of personal jurisdiction over the nonresident Defendants is appropriate under the Constitution.  The Complaint is devoid of facts suggesting that Defendants had contacts with the state of Florida.  To the contrary, Plaintiff has pled facts establishing only that Defendants conduct business and have offices outside of Florida.  Doc. 1 at ¶¶ 8–15.

Further, Plaintiff's Complaint is devoid of facts establishing that Defendants purposefully directed their activities toward a Florida resident such that Defendants had "fair warning" that they may be subject to suit in Florida.  All of Plaintiff's allegations revolve around Plaintiff being denied a medical license in the states of Colorado, Illinois, and North Carolina.  There are no facts to suggest that Defendants purposefully directed their activities to prevent Plaintiff from obtaining a Florida medical license.

Moreover, it appears that Plaintiff was not a resident of the state of Florida at the time Defendants allegedly committed the acts giving rise to Plaintiff's Complaint. According to Plaintiff, the first set of facts giving rise to Plaintiff's Complaint ended on October 4, 2007. Plaintiff did not move to Florida until late 2007. Plaintiff then left Florida in 2010 before the next set of facts giving rise to Plaintiff's Complaint began in 2014. The last allegedly wrongful act that Plaintiff complains of occurred on December 1, 2015, apparently before Plaintiff moved back to Florida in December 2015 and began pursuing a Florida medical license.

Even if Plaintiff had pled facts sufficient to establish that Defendants had fair warning they may be subject to suit in Florida, exercising personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice. First, litigating this matter in Florida would place a substantial burden on Defendants. All of the events at issue occurred outside of Florida. It therefore seems likely that the majority of the records and witnesses involved in this case will be located outside of Florida. Second, Florida's interest in adjudicating this dispute is minimal given that, at its core, this dispute involves the circumstances surrounding the suspension or denial of Plaintiff's medical license in the states of Colorado, Illinois, and North Carolina. Finally, as Plaintiff has repeatedly demonstrated by filing numerous complaints in Colorado, North Carolina, and possibly Illinois, Plaintiff is capable of pursing relief in the appropriate forums and has done so, albeit unsuccessfully, as recently as 2015. Thus, Plaintiff's interest in trying this case in Florida is minimal and is outweighed by the significant burden on Defendants.

### III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that:

1. The Complaint (Doc. 1) be **DISMISSED without prejudice**; and

2. Plaintiff be provided **21 days** in which to file an Amended Complaint setting forth personal jurisdiction, and be advised that failure to do so will result in dismissal.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 12, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy